IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ALABAMA LEGISLATIVE BLACK CAUCUS; BOBBY SINGLETON; ALABAMA ASSOCIATION OF BLACK COUNTY OFFICIALS; FRED ARMSTEAD, GEORGE BOWMAN, RHONDEL RHONE, ALBERT F. TURNER, JR., and JILES WILLIAMS, JR., individually and on behalf of others similarly situated, | * * * * * * * * | |
| Plaintiffs, | * * | Civil Action No. 2:12-CV-691-WKW-WC |
| v. | * * | (3-judge court requested) |
| THE STATE OF ALABAMA; BETH CHAPMAN, in her official capacity as Alabama Secretary of State, | * * * * | |
| Defendants. | * | |

**PLAINTIFFS' MEMORANDUM BRIEF SUPPORTING
MOTION FOR PARTIAL SUMMARY JUDGMENT
AND FOR PRELIMINARY AND PERMANENT INJUNCTION**

Plaintiffs Alabama Legislative Black Caucus et al., through undersigned counsel, respectfully submit this memorandum of authorities in support of their motion for partial summary judgment with respect to Count I of their complaint, Doc. 1 and Doc. 3-1.

## THE CONSTITUTIONAL CLAIM

Plaintiffs' motion for partial summary judgment and for a preliminary and permanent injunction contends that, on their face, the House and Senate redistricting plans enacted by Acts 2012-602 and 2012-603 violate the one-person, one-vote requirement of the Equal Protection Clause by restricting allowable population deviations more than is practicable to comply with the whole-county provisions in §§ 198, 199, and 200 of the Alabama Constitution. The federal constitutional principles on which plaintiffs rely were first established by the U.S. Supreme Court in *Reynolds v. Sims*, 377 U.S. 533 (1964), and, on remand, by this Court in *Sims v. Baggett*, 247 F. Supp. 96 (1965) (3-judge court).

Throughout Alabama history, prior to *Reynolds v. Sims*, representation in both the Alabama House and Senate was "divided according to county lines, and no county ha[d] been subdivided to create a legislative district." *Sims v. Baggett*, 247 F. Supp. at 103. This was in compliance with the whole-county provisos in the Alabama Constitution:

> The house of representatives shall consist of not more than one hundred and five members, unless new counties shall be created, in which event each new county shall be entitled to one representative. The members of the house of representatives shall be apportioned by the legislature among the several counties of the state, according to the number of inhabitants in them, respectively, as ascertained by the decennial census of the United States, which apportionment, when made, shall not be subject to alteration until the next session of the

legislature after the next decennial census of the United States shall have been taken.

Ala. Const. § 198.

It shall be the duty of the legislature at its first session after the taking of the decennial census of the United States in the year nineteen hundred and ten, and after each subsequent decennial census, to fix by law the number of representatives and apportion them among the several counties of the state, according to the number of inhabitants in them, respectively; provided, that each county shall be entitled to at least one representative.

Ala. Const. § 199.

It shall be the duty of the legislature at its first session after taking of the decennial census of the United States in the year nineteen hundred and ten, and after each subsequent decennial census, to fix by law the number of senators, and to divide the state into as many senatorial districts as there are senators, which districts shall be as nearly equal to each other in the number of inhabitants as may be, and each shall be entitled to one senator, and no more; and such districts, when formed, shall not be changed until the next apportioning session of the legislature, after the next decennial census of the United States shall have been taken; provided, that counties created after the next preceding apportioning session of the legislature may be attached to senatorial districts. No county shall be divided between two districts, and no district shall be made up of two or more counties not contiguous to each other.

Ala. Const. § 200.

The Supreme Court in *Reynolds* held:

Mathematical exactness or precision is hardly a workable constitutional requirement. . . . It may be feasible to use political subdivision lines to a greater extent in establishing state legislative districts than in congressional districting while still affording adequate

> representation to all parts of the State. . . . We agree with the view of the District Court that state constitutional provisions should be deemed violative of the Federal Constitution only when validly asserted constitutional rights could not otherwise be protected and effectuated.

377 U.S. at 577, 584 (quoted in *Sims v. Baggett*, 247 F. Supp. at 100). Pursuant to this direction, this Court held:

> It is only when application of the [whole-county] proviso [in § 199 of the Alabama Constitution] brings about an unavoidable conflict that the Supremacy clause controls. There may be, and, indeed, as we shall later point out, there are instances in which the population of a county entitles it to at least one representative. Further, deference to the spirit of the quoted proviso would require that there be **as few** multi-county House districts **as is practicable**, and in instances where multi-county House districts are **unavoidable**, the counties to be joined should, **so far as practicable**, be those which would require **a minimum number** of representatives. The departure from application of the quoted proviso **should not extend further than is required** by application of the Federal Constitution.

*Sims v. Baggett*, 247 F. Supp. at 102 (bold emphases added).

The whole-county provisos in the Alabama Constitution were followed by this Court when in 1972, after the Legislature failed again to reapportion itself, it drew court-ordered House and Senate plans that, for the first time, employed in both houses single-member districts exclusively. *Sims v. Amos*, 336 F. Supp. 924 (M.D. Ala.), aff'd, 409 U.S. 942 (1972). Anticipating the Supreme Court's instructions that, as opposed to the flexibility allowed legislatively drawn redistricting plans, court-ordered redistricting plans must be drawn with "little

4

more than *de minimis* variation," *Chapman v. Meier*, 420 U.S. 1, 26-27 (1975), and *Connor v. Finch*, 431 U.S. 407, 414 (1977), the *Sims v. Amos* court adopted plaintiffs' plan that had only a 2.23% total deviation among House districts and a 1.39% total deviation among Senate districts. 336 F. Supp. at 937. Even with this *de minimis* constraint, the plaintiffs' plan attempted to cross county lines "in as few instances as possible," id. at 938, and when this Court carefully examined the number of county splits it concluded that "[b]oundary lines are sacrificed only where **absolutely necessary** to satisfy the constitutional requirement of one man one vote." 336 F. Supp. at 938-39 and nn. 19 and 20 (bold emphasis added).

Three years ago the U.S. Supreme Court in *Bartlett v. Strickland*, 129 S.Ct. 1231 (2009), enforced the same constitutional rule in North Carolina. It affirmed the judgment of the North Carolina Supreme Court in *Pender County v. Bartlett*, 361 N.C. 491, 649 S.E.2d 364 (2007), which held that the whole-county provision in North Carolina's constitution "should be adhered to by the General Assembly to the maximum extent possible." 361 N.C. at 493, 649 S.E.2d at 366 (quoting *Stephenson v. Bartlett*, 355 N.C. 354, 374, 562 S.E.2d 377, 391 (2002)). The maximum extent possible meant that "only the smallest number of counties necessary to comply with the at or within plus or minus five percent 'one-person, one-vote' standard shall be combined, and communities of interest should be

5

considered in the formation of compact and contiguous electoral districts." *Stephenson v. Bartlett*, 355 N.C. at 384, 562 S.E.2d at 397. The U.S. Supreme Court affirmed and held that § 2 of the Voting Rights Act could justify violating the state constitutional whole-county requirement only where splitting county boundaries was necessary to draw a reasonably compact black voting-age majority district, not a black influence district. *Bartlett v. Strickland*, 129 S.Ct. at 1246-49.

The Alabama Legislature violated these Fourteenth Amendment principles when it passed Acts 2012-602 and 2012-603. It imposed an arbitrary and impracticable $\pm$ 1% deviation requirement that is itself unconstitutional. See http://www.legislature.state.al.us/reapportionment/Guidelines.html ("in every redistricting plan submitted to the Reapportionment Committee, individual district populations should not exceed a 2% overall range of population deviation." Guidelines at page 2 of 9). It did so because it misinterpreted *Larios v. Cox*, 300 F. Supp. 2d 1320 (N.D. Ga. 2004), aff'd sub nom *Cox v. Larios*, 542 U.S. 947 (2004). *Larios* did not hold or suggest that reducing population deviations to $\pm$ 1% was required by the Equal Protection Clause, or that it would provide a safe harbor or eliminate the possibility of invidious discrimination under the one-person, one-vote standard. To the contrary, *Larios* acknowledged that, under controlling Supreme Court case law, $\pm$ 5% deviation is prima facie compliance with the constitutional

6

requirement of population equality, which need not be justified by a state redrawing its legislative districts. 300 F. Supp. 2d at 1339-40 (citing *Connor v. Finch*, 431 U.S. 407, 418 (1977); *White v. Regester*, 412 U.S. 755, 764 (1973); *Brown v. Thomson*, 462 U.S. 835, 842 (1983)). *Larios* simply held that $\pm$ 5% deviation is not a "safe harbor," and that the prima facie presumption of substantial compliance may be rebutted with convincing evidence that the population deviations are tainted with arbitrariness or discrimination. 300 F. Supp. 2d at 1340-41 (citations omitted).

*Larios* held that the equal protection violation lay not in the size of the $\pm$ 5% deviation but in evidence that the deviations had been manipulated for the discriminatory purpose of underpopulating some regions of Georgia while overpopulating other regions, and that this geographic discrimination could not be justified either by party partisan considerations or by an interest in protecting incumbents. 300 F. Supp. 2d at 1322, 1342. The restriction of permissible deviations to $\pm$ 1% in Acts 2012-602 and 2012-603 also is an arbitrary and discriminatory manipulation of population deviations that "violate[s] the fundamental one person, one vote command of *Reynolds*, requiring that states 'make an honest and good faith effort to construct districts ... as nearly of equal population as practicable' and deviate from this principle only where 'divergences

... are based on legitimate considerations incident to the effectuation of a rational state policy.'" *Larios*, 300 F. Supp. 2d at 1341 (quoting 377 U.S. at 577).

It is not practicable to comply with the whole-county provisions in the Alabama Constitution and to minimize the number of county splits when all population deviations are restricted to $\pm$ 1%. This arbitrary constraint is not "required by application of the Federal Constitution." *Sims v. Baggett*, 247 F. Supp. at 102. HB 16 and SB 5, which were sponsored by members of the Alabama Legislative Black Caucus, contained House and Senate redistricting plans that illustrate how the Alabama constitutional whole-county requirements could have been more nearly complied with while still maintaining 27 majority-black voting-age population (VAP) House districts and 8 majority-black VAP Senate districts. See Exhibits F, G, H, and I to the complaint, and the declaration of William S. Cooper attached to plaintiffs' motion for partial summary judgment.[1]

---

[1] Mr. Cooper's House and Senate plans do a better job of avoiding county splits than did the plaintiffs' plans adopted by this Court in *Sims v. Amos*, even though Mr. Cooper maintained 27 majority-black House districts and 8 majority-black Senate districts, while the *Sims* "Plaintiffs eschewed consideration of the racial, economic and ethnic composition (and concentration) of the population in devising their plan." 336 F. Supp. at 938. As a result, this Court can take judicial notice that the 1972 plans (which did not go into effect until the 1974 regular elections) had only 13 House districts and 2 Senate districts with black voting-age majorities. A comparison of the analysis of county splits in *Sims v. Amos*, 336 F. Supp. at 938 n.19, with the Cooper plans in HB 16 and SB 5 is attached to this brief as Appendix A.

As demonstrated by the exhibits attached to the complaint in this action, Doc. 3-1, by employing the $\pm$ 5% population deviation that constitutes prima facie compliance with the one-person, one-vote rule, the 44 extra (unwarranted by population) county splits in the House plan, Act 2012-602, are twice the 22 extra county splits in HB 16, and the 31 extra county splits in the Senate plan, Act 2012-603, are over three times as many as the 9 extra county splits in SB 5. When measured by the Equal Protection standard in *Reynolds v. Sims, Sims v. Baggett*, *Sims v. Amos*, and *Bartlett v. Strickland*, Acts 2012-602 and 2012-603 are patently unconstitutional.

## REMEDY

The next primary election for members of the Alabama House and Senate will be held on the first Tuesday in June 2014. Ala. Code § 17-13-3. The deadline for candidate qualification is sixty days before the primary election. Ala. Code § 17-13-5. The general election will be held on the first Tuesday after the first Monday in November 2014. Ala. Code § 17-14-3. When this Court declares Acts 2012-602 and 603 unconstitutional, it must afford a reasonable opportunity for the Legislature to meet constitutional and statutory requirements by adopting a substitute measure, rather than this Court undertaking to devise and order into effect its own plan. *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978); *Reynolds v. Sims*,

377 U.S. 533, 586 (1964); *Sims v. Amos*, 336 F. Supp. 924, 930 (M.D. Ala.), aff'd, 409 U.S. 942 (1972). The next regular session of the Alabama Legislature convenes Tuesday, February 5, 2013. See http://www.legislature.state.al.us/.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for partial summary judgment should be granted, declaratory and injunctive relief prohibiting enforcement of Acts 2012-602 and 2012-603 should be ordered, and this Court should retain jurisdiction of this action to afford the Alabama Legislature a reasonable opportunity to adopt and to obtain preclearance under § 5 of the Voting Rights Act, 42 U.S.C. § 1973c, of new redistricting plans for the House and Senate that comply with Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, and the First, Fourteenth, and Fifteenth Amendments to the Constitution of the United States.

Should the Alabama Legislature fail in timely manner to enact lawful, constitutional, and enforceable redistricting plans for the Alabama House and Senate, the parties should be instructed to submit redistricting proposals that this Court would adopt in time for the orderly conduct of the primary and general elections for members of the Alabama House and Senate in 2014.

Respectfully submitted this 27th day of August, 2012,

| | |
|---|---|
| Edward Still<br>Bar No. ASB-4786-I 47W<br>130 Wildwood Parkway<br>STE 108 PMB 304<br>Birmingham, AL 35209<br>    205-320-2882<br>    fax 205-320-2882<br>E-mail: still@votelaw.com | s/ James U. Blacksher<br>Bar No. ASB-2381-S82J<br>P.O. Box 636<br>Birmingham AL 35201<br>    205-591-7238<br>    Fax: 866-845-4395<br>E-mail: jblacksher@ns.sympatico.ca<br><br>U.W. Clemon<br>Bar No. ASB-0095-076U<br>WHITE ARNOLD & DOWD P.C.<br>2025 Third Avenue North, Suite 500<br>Birmingham, AL 35203<br>    Phone: (205)-323-1888<br>    Fax:    (205)-323-8907 |
| Attorneys for Plaintiffs | E-mail: uwclemon@waadlaw.com |

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2012, I served the foregoing on the following by first class U.S. mail and by email on the listed counsel:

State of Alabama
c/o Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36104
jimdavis@ago.state.al.us

Beth Chapman
Alabama Secretary of State
State Capitol Bldg. - Suite S-105
600 Dexter Avenue
Montgomery, AL 36103
Jean.Brown@sos.alabama.gov

State of Alabama
c/o Governor Robert Bentley
State Capitol
600 Dexter Avenue
Montgomery, AL 36130
cooper.shattuck@governor.alabama.gov


s/ James U. Blacksher

Attorney for plaintiffs

# APPENDIX A

*Sims v. Amos*, 336 F. Supp. at 938 n.19:

*The House portion of the Plaintiffs' Plan:*

In Alabama there are 37 counties which have populations of less than 32,802 and which ideally should be placed wholly within one district. Of those 37, 24 are within one district (64.86%), 11 are divided into two districts (29.73%), one is divided among three districts (2.70%), and one is divided among four districts (2.70%).

There are 21 counties which have populations between 32,802 and 65,604 and which ideally should be divided between two districts. Of those 21, 14 are divided between two districts (66.67%), six are divided among three districts (28.57%), and one is divided among four districts (4.76%).

There are three counties which have populations between 65,604 and 98,406 and which ideally should be divided among three districts. Of those three, one is divided among three districts (33.33%) and two are divided among four districts (66.67%).

There are two counties which have populations between 98,406 and 131,208 and which ideally should be divided among four districts. Of those two, one is divided among four districts (50.00%) and one is divided among six districts (50.00%).

There are two counties which have populations between 164,010 and 196,812 and which ideally should be divided among six districts. Of those two, both are divided among six districts (100%).

There is one county which should ideally be divided among ten districts, but it is divided among 12.

There is one county which should be divided among 20 districts, but it is divided among 21.

Overall, then, in 62.85% of the cases a county is divided among the ideal number

12

of House districts, and in 25.74% of the cases a county is divided among one more than the ideal number of districts.

*The Senate portion of the Plaintiffs' Plan:*

In Alabama there are 61 counties which have populations of less than 98,406 and which ideally should be placed wholly within one Senate district. Of those 61, 38 are placed wholly within one district (62.3%), 20 are divided between two districts (32.8%), and three are divided among three districts (4.9%).
There are four counties which should be divided between two districts. Of those four, two are divided between two districts (50%) and two are divided among three districts (50%).

There is one county which should be divided among four districts, and it is so divided.

There is one county which should be divided among seven districts, but it is divided among eight.

Overall, then, in 61.2% of the cases a county is divided among the ideal number of Senate districts, and in 34.3% of the cases a county is divided among one more than the ideal number of districts.



Here is the same analysis of the HB 16 and SB 5 plans:

*The HB 16 plan*:

In Alabama there are 39 counties which have populations of between 9,045 and 43,820 and which ideally should be placed wholly within one district. Of those 39, 29 are within one district (74.36%), 8 are divided into two districts (20.51%), and two are divided among three districts (5.13%).

There are 16 counties which have populations between 49,948 and 93,019 and which ideally should be divided between two districts. Of those 16, 11 are divided between two districts (68.75%), and five are divided among three districts

13

(31.25%).

There are five counties which have populations between 101,547 and 140,247 and which ideally should be divided among three districts. Of those five, four are divided among four districts (80.0%), and one is divided among five districts (20,0%).

There is one county which has a population of 182,265 and which ideally should be divided among four districts. It is divided among four.

There are three counties which have populations between 194,656 and 229,363 and which ideally should be divided among five districts. Of these, two are divided among five districts (66.67%), and one is divided among six districts (32.33%).

There is one county which has a population of 334,811 and which should ideally be divided among eight districts, but it is divided among nine.

There is one county which has a population of 412,992 which should ideally be divided among nine districts. It is divided among nine.

There is one county which has a population of 658,466 which should be divided among 14 or 15 districts. It is divided among 14.

Overall, then, in 67.16% of the cases a county is divided among the ideal number of House districts, and in 26.87% of the cases a county is divided among one more than the ideal number of districts.

*The SB 5 plan*:

In Alabama there are 60 counties which have populations of less than 140,247 and which ideally should be placed wholly within one Senate district. Of those 60, 53 are placed wholly within one district (88.33%), and 7 are divided between two districts (11.67%),

There are four counties which should be divided between two districts. All are divided between two districts.

There are two counties which should be divided among three districts. One is divided among three districts, and one is divided among four districts..

There is one county which should be divided among five districts, but it is divided among six.

Overall, then, in 86.57% of the cases a county is divided among the ideal number of Senate districts, and in 13.43% of the cases a county is divided among one more than the ideal number of districts. No county is divided into more than one above the ideal number.