IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ALABAMA LEGISLATIVE BLACK CAUCUS, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | CASE NO. 2:12-CV-691 (Three-Judge Court) |
| THE STATE OF ALABAMA, et al., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) | |
| DEMETRIUS NEWTON, et al., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | CASE NO. 2:12-CV-1081 (Three-Judge Court) |
| THE STATE OF ALABAMA, et al., | ) ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before this three-judge court are three motions filed in <u>Alabama Legislative Black Caucus, et al. v. Alabama</u>, no. 2:12-cv-691, before its consolidation with <u>Newton v. Alabama</u>, no. 2:12-cv-1081. The first is a motion for partial summary judgment and for preliminary and permanent injunction (Doc. # 7) filed by the Alabama Legislative Black Caucus, Bobby Singleton, Alabama Association of Black County Officials, Fred Armstead, George Bowman, Rhondel

Rhone, Albert F. Turner Jr., and Jiles Williams Jr.  The second is a motion for judgment on the pleadings (Doc. # 29) filed by the State of Alabama and Beth Chapman in her official capacity.  The third is an oral motion made at a hearing on the first two motions where the Black Caucus moved for leave to amend count three of its complaint.

These three motions are now ripe for our decision.  We deny the motion for partial summary judgment and for preliminary and permanent injunction filed by the Black Caucus and grant the motion for judgment on the pleadings filed by the State defendants as to count one of the complaint filed by the Black Caucus.  We deny the motion for judgment on the pleadings as to count two of the complaint filed by the Black Caucus.  We also dismiss without prejudice and grant the Black Caucus leave to amend count three of its complaint.

## I. BACKGROUND

This matter arises from the decennial redistricting of the Alabama Legislature.  A special session of the Alabama Legislature convened to establish new districts for the House of Representatives and the Senate.  The Joint Legislative Reapportionment Committee established guidelines that restricted population deviations in the new districts to two percent.  On May 31, 2012, Governor Robert Bentley signed into law Acts 2012-602 and 2012-603, which established the new districts.

2

After Governor Bentley signed the Acts, the Black Caucus filed a complaint against the State of Alabama and Beth Chapman, in her official capacity as the Secretary of State of Alabama.  That complaint asserted three counts: violation of the guarantee of one-person, one-vote under the Equal Protection Clause of the Fourteenth Amendment, U.S. Const. Amend. XIV, § 2; dilution and isolation of the strength of black votes in violation of section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973, the Fourteenth Amendment, U.S. Const. Amend. XIV, and the Fifteenth Amendment, U.S. Const. Amend. XV; and partisan gerrymandering in violation of the First Amendment, U.S. Const. Amend. I.  The Black Caucus moved for partial summary judgment and preliminary and permanent injunctive relief on count one of its complaint.

The State defendants moved to dismiss or, in the alternative, to stay the action until Attorney General Luther Strange obtained either administrative or judicial preclearance of the new districts under section 5 of the Voting Rights Act, 42 U.S.C. § 1973c.  We granted the motion of the State defendants to stay the matter until either the Attorney General of the United States, Eric Holder, or the United States District Court for the District of Columbia decided whether to preclear the districts.  After Attorney General Holder precleared the new districts, we lifted the stay of the action and denied the motion to dismiss filed by the State

defendants.  The State defendants then filed an answer to the complaint and a motion for judgment on the pleadings with respect to all three counts.

After the hearing on the latter motions, another complaint was filed about the new districts.  Demetrius Newton, the Alabama Democratic Conference, Stacey Stallworth, Framon Weaver Sr., Rosa Toussaint, and Lynn Pettway filed a complaint against the State of Alabama; Robert Bentley, in his official capacity as the Governor of Alabama; and Beth Chapman, in her official capacity as the Secretary of State of Alabama.  The Newton plaintiffs asserted three counts in their complaint: violation of section 2 of the Voting Rights Act; racial gerrymandering in violation of the Fourteenth and Fifteenth Amendments; and violations of constitutional and statutory rights under the Voting Rights Act and the Fourteenth and Fifteenth Amendments.  After the Newton action was assigned to this three-judge court, we determined that the Black Caucus action and the Newton action involve common questions of law and fact and consolidated them to avoid unnecessary repetition and confusion.  See Fed R. Civ. P. 42(a)(2).  The State defendants have not yet been served or appeared in the second action.

## II. DISCUSSION

A judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is to be granted only "when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and

any judicially noticed facts." Cunningham v. Dist. Att'y's Office for Escambia Cnty., 592 F.3d 1237, 1255 (11th Cir. 2010) (quoting Andrx Pharm., Inc. v. Elan Corp., 421 F.3d 1227, 1232–33 (11th Cir. 2005)). "We must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." Cannon v. City of W. Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001). And a summary judgment is to be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A. Guarantee of One-Person, One-Vote Under the Fourteenth Amendment

In count one of its complaint, the Black Caucus contends that the new districts violate the guarantee of one-person, one-vote under the Fourteenth Amendment, but its complaint fails to allege facts to support this claim for relief. The complaint filed by the Black Caucus alleges that, because the Legislature chose to maintain population deviations at below two percent, "[the districts] violate the one-person, one-vote requirement of the Equal Protection Clause by restricting allowable population deviations more than is practicable to comply with the whole-county provisions in the Alabama Constitution and by failing to comply with those whole-county provisions to the extent practicable." See Ala. Const. Art. IX, §§ 198–200. In other words, the complaint filed by the Black Caucus alleges that the new districts have too little deviation in population equality in violation of

the state constitution.  Nothing in these allegations suggests that the new districts violate the guarantee of one-person, one-vote under the Fourteenth Amendment.

The odd complaint of the Black Caucus that the new districts are too equal in population fails to address a concern of the Fourteenth Amendment.  The Supreme Court has explained that "the fundamental principle of representative government in this country is one of equal representation for equal numbers of people, without regard to race, sex, economic status, or place of residence within a State."  Reynolds v. Sims, 377 U.S. 533, 560–61, 84 S. Ct. 1362, 1381 (1964).  For that reason, "the Equal Protection Clause requires both houses of a state legislature to be apportioned on a population basis."  Id. at 576, 84 S. Ct. at 1389.  The Fourteenth Amendment required Alabama to "make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable."  Id. at 577, 84 S. Ct. at 1390.  State legislatures have some flexibility in the creation of new districts, see id. at 578, 84 S. Ct. at 1390, and "an apportionment plan with a maximum population deviation under 10% falls within [the] category of minor deviations" that "are insufficient to make out a prima facie case of invidious discrimination under the Fourteenth Amendment so as to require justification by the State," Brown v. Thomson, 462 U.S. 835, 842, 103 S. Ct. 2690, 2696 (1983) (internal quotation marks omitted).

6

The pleadings establish a presumption that the new districts satisfy the guarantee of one-person, one-vote, and the complaint filed by the Black Caucus alleges no facts to rebut that presumption.  Because a deviation in population equality of even as much as ten percent is "considered to be of prima facie constitutional validity," see Connor v. Finch, 431 U.S. 407, 418, 97 S. Ct. 1828, 1835 (1977); see also Brown, 462 U.S. at 842, 103 S. Ct. at 2696, a deviation of less than two percent in population equality, as the complaint filed by the Black Caucus alleges, easily establishes a presumption that the new districts satisfy the guarantee of one-person, one-vote.  The Black Caucus fails to rebut that presumption when it complains that the new districts have too much equality in population.

To the extent that the complaint filed by the Black Caucus alleges that state officials violated state law, we lack subject-matter jurisdiction to consider it.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 117, 104 S. Ct. 900, 917 (1984).  The Supreme Court has held that "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when . . . the relief sought and ordered has an impact directly on the State itself."  Id.  "The Eleventh Amendment acts as a jurisdictional bar," see Doe v. Moore, 410 F.3d 1337, 1349 (11th Cir. 2005), so we "cannot proceed at all in any cause," see Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869).

The Black Caucus interprets Sims v. Baggett, 247 F. Supp. 96 (M.D. Ala. 1965), to render the whole-county provisions of the Alabama Constitution enforceable as a matter of federal law, but that decision stands for no such proposition. When it addressed the whole-county provisions of the Alabama Constitution, the court in Sims ruled that the provisions did not facially violate the Constitution of the United States so as to be "wholly inoperative." Id. at 101. The court explained its duty to respect state law in remedying a violation of the federal Constitution insofar as state law remained operative. Id. at 102–03. But the court did not order the State defendants against their will, nor could it have, to comply with those provisions of the state constitution. See id.; Pennhurst, 465 U.S. at 117, 104 S. Ct. at 917. The court instead enforced only the guarantee of the Equal Protection Clause that "one person's vote must be worth as much as that of any other person, so far as is practicable." Sims, 247 F. Supp. at 99.

Nor do we find persuasive the citation to the decision of the Supreme Court in Bartlett v. Strickland, 556 U.S. 1, 6, 129 S. Ct. 1231, 1238 (2009), where the Supreme Court addressed the intersection of section 2 of the Voting Rights Act and the whole-county provision of the North Carolina Constitution. In Bartlett, the Supreme Court of North Carolina had held that the boundaries of a district of the North Carolina House of Representatives conflicted with the whole-county provisions of that state constitution. Pender Cnty. v. Bartlett, 649 S.E.2d 364, 376

(N.C. 2007). The Supreme Court of North Carolina also had held that, on the facts before it, the application of the North Carolina whole-county provision would not violate section 2 of the Voting Rights Act. Id. at 375–76. The Supreme Court affirmed the decision of the Supreme Court of North Carolina and held that there was no conflict between section 2 of the Voting Rights Act and the North Carolina whole-county provision as applied to the facts before it. Bartlett, 556 U.S. at 14–15, 129 S. Ct. at 1243. Unlike the parties in Bartlett, the Black Caucus has not availed itself of the state courts to adjudicate the violation of state law alleged in its complaint. Bartlett in no way supports the argument that we may enforce provisions of a state constitution against state defendants.

As to count one, we grant the motion for judgment on the pleadings in favor of the State defendants and deny the motion of the Black Caucus for partial summary judgment and for preliminary and permanent injunction. The population deviation in both sets of the districts is de minimis and the complaint filed by the Black Caucus fails to allege any facts that would rebut the presumption that those districts satisfy the guarantee of one-person, one-vote under the Fourteenth Amendment. See Connor, 431 U.S. at 418, 97 S. Ct. at 1835; see also Brown, 462 U.S. at 842, 103 S. Ct. at 2696. A federal court is not the forum for the adjudication of a claim under state law against state defendants. Pennhurst, 465 U.S. at 117, 104 S. Ct. at 917. The courts of Alabama are open to entertain suits

under state law, but the Eleventh Amendment bars us from remedying a complaint that state officers violated state law.

### B. Dilution and Isolation of the Strength of Black Votes Under Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments

In count two of its complaint, the Black Caucus contends that the new districts were adopted with the intent to dilute and isolate the strength of black votes in violation of section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments.  When we evaluate the sufficiency of a complaint of intentional discrimination in legislative redistricting, we consider the several factors articulated in Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 97 S. Ct. 555 (1977), see Reno v. Bossier Parish Sch. Bd., 520 U.S. 471, 488–89, 117 S. Ct. 1491, 1502–03 (1997), which include "[t]he impact of the official action"; "[t]he historical background of the [legislature's] decision"; "[t]he specific sequence of events leading up to the challenged decision"; "[d]epartures from the normal procedural sequence"; and "[t]he legislative or administrative history," Arlington Heights, 429 U.S. at 266–68, 97 S. Ct. at 564–65.  The Black Caucus alleges that the Alabama Legislature intentionally packed black voters into black-majority districts to "minimiz[e] the ability of African Americans to form coalitions with white voters to elect legislators of their choice" and to "politically segregat[e] the elected representatives of African-American voters and [to] minimiz[e] their ability to

10

participate in the legislative process and to influence the outcomes of legislation."
The Black Caucus alleges that the impact of the districts "bears more heavily on
one race than another" because the Acts "unnecessarily maximiz[ed] or 'pack[ed]'
[] 27 House districts and 8 Senate districts with majority-black voting-age
populations" and because the districts "are designed to include 6 more white,
Republican members in the Jefferson County Local Legislative Delegation than are
required by the county's population, thus purposefully . . . diluting black voting
strength in the local legislative delegation." See id. at 266, 97 S. Ct. at 564
(internal quotation marks omitted).  The Black Caucus invokes "[t]he historical
background of the decision" when it alleges that the districts "purposefully
perpetuate and attempt to restore Alabama's historical policy of segregating
African Americans in party politics." See id. at 267, 97 S. Ct. at 564.  And the
Black Caucus alleges that the Alabama Legislature "[d]epart[ed] from the normal
procedural sequence" when it established the two percent population deviation for
the new districts and ignored the whole-county provisions of the Alabama
Constitution.  See id.  "Determining whether invidious discriminatory purpose was
a motivating factor demands a sensitive inquiry into such circumstantial and direct
evidence of intent as may be available."  Id. at 266, 97 S. Ct. at 564.

    The Black Caucus has "state[d] a claim to relief that is plausible on its face."
See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal

quotation marks omitted).  Count two alleges facts that correspond with the factors described in Arlington Heights.  When we rule on a motion for judgment on the pleadings, "[w]e must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party."  Cannon, 250 F.3d at 1301.

Although the State defendants offer alternative reasons for the boundaries of the new districts, these alternative reasons do not establish that the complaint filed by the Black Caucus fails as a matter of law.  The State defendants contend that the districts were drawn to remedy the "unconstitutional[] malapportion[ment]" that existed after the 2010 Census; to create "substantial equality among the various districts" following the decision in Larios v. Cox, 300 F. Supp. 2d 1320 (N.D. Ga. 2004) aff'd sub nom Cox v. Larios, 542 U.S. 947, 124 S. Ct. 2806 (2004), which held that population deviations below ten percent do not provide states with a safe harbor from challenges about the guarantee of one-person, one-vote, id. at 1340–41; to comply with sections 2 and 5 of the Voting Rights Act by moving more black voters into majority-black districts to avoid "weakening the voting strength of the African-Americans in those districts" in the light of the 2010 Census; to avoid a complaint of "systemic overpopulation of white-majority districts and underpopulation of black-majority districts," see Montiel v. Davis, 215 F. Supp. 2d 1279, 1286 (S.D. Ala. 2002); and to avoid a complaint of systemic packing of

districts based on partisanship, see Gustafson v. Johns, 434 F. Supp. 2d 1246 (S.D.

Ala. 2006).  In a nutshell, the State defendants contend that the new districts

respect the Constitution and federal law and that the Acts unpacked districts to

eliminate alleged racial and partisan discrimination.  Although proof of these

legislative purposes, if we were to credit it, would rebut a claim of invidious

discrimination, a motion for judgment on the pleadings is not the vehicle for the

resolution of conflicting evidence.

   The pleadings also present disputed issues of fact that preclude a judgment

on the pleadings on the alternative ground of the State defendants that no valid

remedy exists for the claim raised in count two.  The Black Caucus has alleged

enough facts that, if proven to be true, could entitle it to relief.  See Horsley v.

Feldt, 304 F.3d 1125, 1131 (11th Cir. 2002).  The State defendants respond that

there is no remedy for the claim of vote dilution because "[a]ny remedy that would

favor the interests of African-American voters by diluting the votes in white

majority districts would be as unlawful as a remedy that favored the interests of

white voters by diluting the votes in black-majority districts."  "[W]hen material

issues of fact are raised by the answer and the defendant[s] seek[] judgment on the

pleadings on the basis of this matter, [their] motion cannot be granted."  5C

Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1368 at

253–54 (2004)).

## C. Partisan Gerrymandering

In count three of its complaint, the Black Caucus alleges that the Alabama Legislature engaged in partisan gerrymandering when it created the new districts, but its complaint fails to identify a standard by which we can evaluate that claim. See Vieth v. Jubelirer, 541 U.S. 267, 313, 124 S. Ct. 1769, 1796 (2004) (Kennedy, J., concurring in the judgment).  Although a claim of partisan gerrymandering is justiciable, Davis v. Bandemer, 478 U.S. 109, 143, 106 S. Ct. 2797, 2816 (1986), one problem for the Black Caucus is that a majority of the Supreme Court so far has been unable to identify a judicial standard for a claim of partisan gerrymandering, see Vieth, 541 U.S. at 334–35, 124 S. Ct. 1809–10 (Stevens, J., dissenting) (proposing a standard under which district maps violate the Equal Protection Clause "when partisanship, like race, has played too great of a role in the districting process"); id. at 362, 124 S. Ct. at 1825 (Breyer, J., dissenting) (proposing a standard that, at minimum, would encompass "gerrymandering that leads to entrenchment [as] an abuse that violates the Constitution's Equal Protection Clause"); id. at 347–50, 124 S. Ct. at 1817–19 (Souter, J., dissenting) (proposing a five-factor test: "First, the resident plaintiff would identify a cohesive political group to which he belonged"; "[s]econd, a plaintiff would need to show that the district of his residence paid little or no heed to those traditional districting principles whose disregard can be shown straightforwardly"; "[t]hird, the plaintiff

14

would need to establish specific correlations between the district's deviations from traditional districting principles and the distribution of the population of his group"; "[f]ourth, a plaintiff would need to present the court with a hypothetical district including his residence"; "[f]ifth, and finally, the plaintiff would have to show that the defendants acted intentionally to manipulate the shape of the district in order to pack or crack his group").  And a plurality of the Court has declared the task a dead end, see id. at 306, 124 S. Ct. at 1792 (Scalia, J., joined by Rehnquist, C.J., and O'Connor and Thomas, JJ) ("Eighteen years of essentially pointless litigation have persuaded us that Bandemer is incapable of principled application.").  In its complaint, the Black Caucus alleged that this claim is based on the First Amendment, but in briefs and at the hearing on these motions, the Black Caucus contended that this claim is based on the Equal Protection Clause of the Fourteenth Amendment.  Where a court "ha[s] no standard by which to measure the burden [plaintiffs] claim has been imposed on their representational rights, [plaintiffs] cannot establish that the alleged political classifications burden those same rights."  Id. at 313, 124 S. Ct. at 1796 (Kennedy, J., concurring in the judgment).

At the hearing, the Black Caucus moved for leave to amend count three to allege more facts and constitutional grounds to support its claim of political gerrymandering and to identify a judicial standard by which we can adjudicate the

15

claim.  Because count three fails to identify a judicial standard for the adjudication of a claim of political gerrymandering, we dismiss count three without prejudice and grant the Black Caucus leave to amend its complaint.  And because we dismiss count three without prejudice, we deny as moot the motion by the State defendants for judgment on the pleadings as to count three.

### III. CONCLUSION

On consideration of the motions, replies, and response (Docs. # 7, 29, 30, 32, 35, 39) as well as supporting and opposing authority, it is ORDERED that the motion by the Black Caucus for partial summary judgment and for preliminary and permanent injunction as to count one of its complaint is DENIED.  The motion by the State defendants for judgment on the pleadings as to count one of the complaint filed by the Black Caucus is GRANTED. The motion by the State defendants for judgment on the pleadings as to count two of that complaint is DENIED.  Count three of that complaint is DISMISSED WITHOUT PREJUDICE.  We GRANT the Black Caucus leave to amend its complaint within 21 days from the date of this order.  The motion by the State defendants for judgment on the pleadings as to count three of that complaint is DENIED AS MOOT.

DONE this 26th day of December, 2012.

_____/s/ William H. Pryor, Jr._____
UNITED STATES CIRCUIT JUDGE
PRESIDING

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE

_____/s/ Myron H. Thompson_____
UNITED STATES DISTRICT JUDGE