IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ALABAMA LEGISLATIVE BLACK CAUCUS, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 2:12-CV-691 (Three-Judge Court) |
| THE STATE OF ALABAMA, et al., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |
| DEMETRIUS NEWTON, et al., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 2:12-CV-1081 (Three-Judge Court) |
| THE STATE OF ALABAMA, et al., | ) ) | |
| Defendants. | ) ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

On March 27, 2013, we entered an order that denied the second motion for

partial summary judgment filed by the Alabama Legislative Black Caucus, Bobby

Singleton, the Alabama Association of Black County Officials, Fred Armstead,

George Bowman, Rhondel Rhone, Albert F. Turner Jr., and Jiles Williams Jr.

Later that day, the Black Caucus filed a motion for this three-judge court to alter or

amend the order "so as to comply with Rules 52(a)(2) and 56(a), Fed. R. Civ. P."

For the reasons explained in this memorandum, our initial order denying the second motion for partial summary judgment complied with Rules 52(a)(2) and 56(a). We thus **DENY** the motion, but we sua sponte **VACATE** our previous order, **DENY** the second motion of the Black Caucus for a partial summary judgment, and **SUBSTITUTE** this memorandum opinion and order to explain why the Black Caucus has demonstrated neither that it is "entitled to judgment as a matter of law" nor that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

## I. BACKGROUND

This matter arises from the decennial redistricting of the Alabama Legislature. A special session of the Alabama Legislature convened to establish new districts for the House of Representatives and the Senate. The Joint Legislative Reapportionment Committee established guidelines that restricted population deviations in the new districts to two percent. On May 31, 2012, Governor Robert Bentley signed into law Acts 2012-602 and 2012-603, which established the new districts.

After Governor Bentley signed the Acts, the Black Caucus filed a complaint against the State of Alabama and Beth Chapman, in her official capacity as the Secretary of State of Alabama. That complaint asserted three counts: violation of the guarantee of one person, one vote under the Equal Protection Clause of the

2

Fourteenth Amendment, U.S. Const. Amend. XIV, § 2; dilution and isolation of the strength of black votes in violation of section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973, the Fourteenth Amendment, U.S. Const. Amend. XIV, and the Fifteenth Amendment, U.S. Const. Amend. XV; and partisan gerrymandering in violation of the First Amendment, U.S. Const. Amend. I.  The Black Caucus moved for partial summary judgment and preliminary and permanent injunctive relief on count one of its complaint.

The State defendants moved to dismiss or, in the alternative, to stay the action until Attorney General Luther Strange obtained either administrative or judicial preclearance of the new districts under section 5 of the Voting Rights Act, 42 U.S.C. § 1973c.  We granted the motion of the State defendants to stay the matter until either the Attorney General of the United States, Eric Holder, or the United States District Court for the District of Columbia decided whether to preclear the districts.  After Attorney General Holder precleared the new districts, we lifted the stay of the action and denied the motion to dismiss filed by the State defendants.  The State defendants then filed an answer to the complaint and a motion for judgment on the pleadings with respect to all three counts. After the hearing on the latter motions, another complaint was filed about the new districts.  Demetrius Newton, the Alabama Democratic Conference, Stacey Stallworth, Framon Weaver Sr., Rosa Toussaint, and Lynn Pettway filed a

complaint against the State of Alabama; Robert Bentley, in his official capacity as the Governor of Alabama; and Beth Chapman, in her official capacity as the Secretary of State of Alabama.  The Newton plaintiffs asserted three counts in their complaint: violation of section 2 of the Voting Rights Act; racial gerrymandering in violation of the Fourteenth and Fifteenth Amendments; and violations of constitutional and statutory rights under the Voting Rights Act and the Fourteenth and Fifteenth Amendments.  After the Newton action was assigned to this three-judge court, we determined that the Black Caucus action and the Newton action involve common questions of law and fact and consolidated them to avoid unnecessary repetition and confusion.  See Fed R. Civ. P. 42(a)(2).

On December 26, 2012, we denied the first motion for partial summary judgment filed by the Black Caucus with respect to count one, granted the motion of the State defendants for judgment on the pleadings as to count one, denied the motion by the State defendants for judgment on the pleadings as to count two, and dismissed without prejudice count three of the complaint filed by the Black Caucus.  We granted the Black Caucus leave to amend its complaint within 21 days from the date of the order "to allege more facts and constitutional grounds to support its claim of political gerrymandering and to identify a judicial standard by which we can adjudicate the claim."

4

The Black Caucus timely filed an amended complaint with a new count three entitled "Partisan Gerrymandering."  In count three of the amended complaint, the Black Caucus identifies as its standard of adjudication "that traditional or neutral districting principles may not be subordinated in a dominant fashion by either racial or partisan interests absent a compelling state interest for doing so, particularly where the traditional districting principle is embedded in the state constitution."  The complaint alleges that the Acts were "designed to promote the agenda of the partisan majority to maximize the number of seats statewide that Republicans will hold in the Legislature" and that the Acts "dilut[e] the voting strength of county residents in electing the members of their local legislative delegations by unnecessarily splitting county boundaries and including in local legislative delegations legislators who are elected in part by voters residing in other counties."  The complaint alleges that a "county's local legislative delegation effectively controls most important local government policies."  Specifically, the complaint alleges that this control is exercised "through written and informal rules of the Legislature, the rule of 'local courtesy' in particular, by which local laws affecting only one county are routinely uncontested on the floor of the House and Senate when they are approved by that county's local legislative delegation."

The Black Caucus then filed a second motion for partial summary judgment with respect to count three.  The Black Caucus contends that the parties do not

5

dispute that "[t]he Reapportionment Committee Guidelines arbitrarily and impracticably required that 'in every redistricting plan submitted to the Reapportionment Committee, individual district populations should not exceed a 2% overall range of population deviation'"; that the House plan "splits 44 counties more than are necessary to satisfy the one-person, one-vote requirement"; that the Senate plan "splits 31 counties more than are necessary to satisfy the one-person, one-vote requirement"; and that "[t]he Legislature could have reduced substantially the number of county splits had it employed the 10% overall population deviation (± 5%) that constitutes substantial population equality under controlling Supreme Court precedents."  The Black Caucus also contends that "[t]he county's local legislative delegation effectively controls most important local government policies . . . through written and informal rules of the Legislature, [particularly] the rule of 'local courtesy'"; that "[t]he ± 1% restriction was adopted for an explicit partisan purpose, that is, ostensibly, as an attempt to avoid the type of partisan gerrymandering found unconstitutional in Larios [v. Cox, 300 F. Supp. 2d 1320 (N.D. Ga. 2004), aff'd sub nom Cox v. Larios, 542 U.S. 947, 124 S. Ct. 2806 (2004)]"; and that "[t]here is no compelling federal or state reason or rational basis for dividing" many of the counties among more districts than necessary to satisfy the 10% constitutional requirement or for increasing the size of the legislative delegations of the counties.

6

As the legal ground for summary judgment, the Black Caucus argues that the Equal Protection Clause prohibits "diluting the ability of county voters independently to choose the members of their local legislative delegation more than is required to comply with the statewide standard of equal population among House and Senate districts."  The Black Caucus clarified that it "do[es] not allege that the rule of local courtesy and other constitutional, statutory, and internal legislative rules and procedures governing passage of local laws violate the Equal Protection Clause."  Instead, it challenges only the Acts themselves "(1) because they deny the fundamental rights of county residents to an equal and undiluted vote for the legislators who control the laws governing their local governments, and (2) because they are 'crazy quilts' that construct House and Senate districts with no rational basis."

In its prayer for relief, the Black Caucus sought a declaratory judgment that the Acts are unconstitutional, a preliminary and permanent injunction prohibiting the defendant Secretary of State of Alabama from enforcing the Acts, a reasonable opportunity for the Alabama Legislature to adopt and obtain preclearance of new redistricting plans, and attorney's fees.

We denied the second motion for summary judgment, and the Black Caucus filed a motion to alter or amend our order.  In its motion, the Black Caucus argued that our order failed to comply with the requirements of Rules 52(a)(2) and 56(a)

that we state findings of fact and conclusions of law to explain our order.  The

Black Caucus argued the State defendants had not disputed any of the material

facts in its second motion for partial summary judgment and that, by not

identifying any in our initial order, we prejudiced the Black Caucus during

discovery by not narrowing the disputed issues.

## II.  DISCUSSION

We divide our discussion in three parts.  First, we explain why the Black

Caucus lacks a legal basis to require this Court to alter or amend our order denying

the second motion for partial summary judgment.  Second, we explain why the

Black Caucus has likely failed to state a colorable claim for relief and has certainly

not established an entitlement to judgment as a matter of law.  Third, we explain

why, even if count three of the complaint could be read to state a claim, the Black

Caucus has failed to establish that no genuine dispute of a material fact exists.

### A.  *The Black Caucus Lacks a Legal Basis to Require this Three-Judge Court to Alter or Amend Its Judgment.*

In its motion to alter or amend, the Black Caucus relied on three Federal

Rules of Civil Procedure: Rule 52(a)(2) and Rule 56(a) as the substantive ground

for the motion, and Rule 59(e) as the procedural vehicle.  But neither Rule 52(a)(2)

nor Rule 56(a) require us to state reasons for our denial of the motion, and Rule

59(e) is not the correct procedural vehicle for the relief requested.

First, Rule 52(a)(2) does not apply because the second motion for partial summary judgment filed by the Black Caucus was not a motion for an interlocutory injunction. Rule 52(a)(2) provides, "In granting or refusing an interlocutory injunction, the court must [] state the findings and conclusions that support its action." Fed. R. Civ. P. 52(a)(2). Our earlier order was interlocutory in nature, but it did not involve the denial of an injunction. The Black Caucus asked for a permanent and preliminary injunction as one form of relief, but did not cite the standard for the grant of a preliminary injunction, nor make any argument about that standard. The Supreme Court has explained that an "order denying summary judgment to a plaintiff who has requested injunctive relief," but who has taken "no practical step toward obtaining such relief," is not an order denying a preliminary injunction. Goldstein v. Cox, 396 U.S. 471, 475, 479, 90 S. Ct. 671, 673, 675 (1970). Like the plaintiffs in Goldstein, the Black Caucus requested an injunction as part of its prayer for relief, but it "filed no separate application for a preliminary injunction" and never "urged the appropriateness of temporary relief." Id. at 479, 90 S. Ct. at 675. Because our order was not an order refusing an interlocutory injunction, Rule 52(a)(2) did not require us to state findings of fact and conclusions of law to support our decision.

Second, Rule 56(a) counsels us, as a prudential matter, to state the reasons for our decision, but it does not require us to do so. Rule 56(a) provides, in part,

9

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion."  Fed. R. Civ. P. 56(a).  The text itself manifests the prudential nature of the rule.  By contrast to the statement that a court "shall" grant a summary judgment if the movant meets the standard, Rule 56(a) provides only that a court "should" state on the record the reasons for its decision.  See id.  And the Advisory Committee notes further explain that the direction that courts should state reasons for their denial of a summary judgment serves prudential goals, including the facilitation of an appeal and subsequent trial proceedings, but that "[t]he statement on denying summary judgment need not address every available reason." Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendments.  Because the requirement in the last sentence of Rule 56(a) is not mandatory, it did not require us to state the reasons for our denial of summary judgment.

Finally, we note that the Black Caucus used the inappropriate vehicle for its motion.  Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of a judgment," but our order was not a judgment.  Black's Law Dictionary defines judgment as "[a] court's final determination of the rights and obligations of the parties in a case."  Black's Law Dictionary (9th ed. 2009).  And Rule 54(a) explains that the word "'[j]udgment' as

used in these rules includes a decree and any order from which an appeal lies."

Our order did not constitute a final determination of the rights and obligations of

the parties, and no appeal from that order is available.  Direct appeals from a three-

judge court lie only "from an order granting or denying, after notice and hearing,

an interlocutory or permanent injunction in any civil action, suit or proceeding

required by any Act of Congress to be heard and determined by a district court of

three judges."  28 U.S.C. § 1253.  The Supreme Court has interpreted section 1253

to permit it to review interlocutory orders only when the orders grant or deny

preliminary injunctions.  Goldstein, 396 U.S. at 475, 90 S. Ct. at 674.  As the

Supreme Court explained in Goldstein, "an order denying summary judgment to a

plaintiff who has requested injunctive relief," but who has taken "no practical step

toward obtaining such relief," cannot be considered an order granting or denying a

preliminary injunction.  Id. at 475, 479, 90 S. Ct. at 673, 675.  Because our denial

of summary judgment was an interlocutory order, but not one that granted or

denied a preliminary injunction, no appeal lies from that order.  See id.  And

because no appeal lies from our order, it is not a judgment within the meaning of

Rule 59(e).

   *B.  The Black Caucus Likely Failed to State a Claim in Count Three.*

   Count three of the amended complaint likely fails to state a claim for two

reasons.  First, count three of the amended complaint, like count three in the first

complaint filed by the Black Caucus, fails to provide a judicial standard for the adjudication of the claim.  Second, under any standard of adjudication, the Black Caucus has failed to explain how it is entitled to a judgment in its favor as a matter of law.

First, the Black Caucus has again failed to provide a standard by which we can evaluate its claim of partisan gerrymandering.  In our order dismissing count three of the original complaint, we explained that, "[w]here a court 'ha[s] no standard by which to measure the burden [plaintiffs] claim has been imposed on their representational rights, [plaintiffs] cannot establish that the alleged political classifications burden those same rights.'"  See Vieth v. Jubelirer, 541 U.S. 267, 313, 124 S. Ct. 1769, 1796 (2004) (Kennedy, J., concurring in the judgment).  In its amended complaint, the Black Caucus states that, although "[t]he Supreme Court has not established a free-standing constitutional standard upon which claims of partisan gerrymandering can be based," "the Court has held that traditional or neutral districting principles may not be subordinated in a dominant fashion by either racial or partisan interests absent a compelling state interest for doing so, particularly where the traditional districting principle is embedded in the state constitution."  But none of the cases the Black Caucus cites for this proposition are about partisan gerrymandering.  Shaw v. Reno, 509 U.S. 630, 113 S. Ct. 2816 (1993), and Bartlett v. Strickland, 556 U.S. 1, 129 S. Ct. 1231 (2009),

involved claims of racial, not political, gerrymandering.  See Bartlett, 556 U.S. at 6, 129 S. Ct. at 1238; Shaw, 509 U.S. at 636, 113 S. Ct. at 2821.  And the three-judge court in Larios considered only a one person, one vote challenge because it had already granted a summary judgment against the plaintiffs' claim of partisan gerrymandering.  300 F. Supp. 2d at 1322.

In his controlling concurrence in Vieth, Justice Kennedy specifically rejected the argument that partisan gerrymandering claims should be treated the same as racial gerrymandering claims.  Vieth, 541 U.S. at 307, 124 S. Ct. at 1793 (Kennedy, J., concurring in the judgment) ("That courts can grant relief in districting cases where race is involved does not answer our need for fairness principles here.  Those controversies implicate a different inquiry.  They involve sorting permissible classifications in the redistricting context from impermissible ones.  Race is an impermissible classification.  Politics is quite a different matter. A determination that a gerrymander violates the law must rest on something more than the conclusion that political classifications were applied.  It must rest instead on a conclusion that the classifications, though generally permissible, were applied in an invidious manner or in a way unrelated to any legitimate legislative objective." (citations omitted)).  In the light of Justice Kennedy's statement, the Black Caucus cannot seriously contend that we should apply the racial gerrymandering standard to a partisan gerrymandering claim, and the Black

13

Caucus has again failed to provide us the judicial standard we need to adjudicate its claim.

The failure of the Black Caucus to provide this Court an adjudicative standard for its new claim of partisan gerrymandering is exacerbated by the internal inconsistencies of its amended complaint.  Although the amended complaint states that we should require a compelling justification from the State for its use of partisan classifications in the redistricting process, the complaint also repeatedly alleges that the State lacked a rational basis for its districting plans.  The tension between these allegations underscores the failure of the Black Caucus to provide us the standard we required in our previous order.

Second, the Black Caucus has failed to establish that it is entitled to judgment as a matter of law.  The Black Caucus argues that creating more equality among districts than is necessary to satisfy the Equal Protection Clause somehow violates the Equal Protection Clause when the effect is to dilute the votes of county residents for the members of their local legislative delegation.  As support for this argument, the Black Caucus cites two decisions, Vander Linden v. Hodges, 193 F.3d 268 (4th Cir. 1999), and DeJulio v. Georgia, 290 F.3d 1291 (11th Cir. 2002), in which circuit courts confirmed that the one person, one vote requirement applies to local government when the persons who serve in local government are selected by popular election to perform governmental functions, DeJulio, 290 F.3d at 1295;

Vander Linden, 193 F.3d at 272.  In Vander Linden, the Fourth Circuit invalidated, under the one person one vote requirement, a delegation system in which local delegations of legislators were statutorily responsible for a number of general county and governmental functions.  193 F.3d at 271, 281.  In DeJulio, the Eleventh Circuit considered procedures for the consideration of local legislation in Georgia that are factually analogous to those present in Alabama and concluded that they did not violate the one person, one vote requirement.  Specifically, the plaintiffs in DeJulio challenged the rule of local courtesy under which "local legislation [that] has received the requisite number of signatures of representatives and senators whose districts lie partially or wholly within the locality which the legislation affects[] [] is ordinarily passed on a contested basis as a matter of local courtesy."  DeJulio, 290 F.3d at 1293–94.  In Georgia, like in Alabama, "[l]ocal courtesy is a custom, [] and is not provided for in either the House or Senate rules."  See id. at 1294.  The Eleventh Circuit concluded that a one person, one vote challenge to these procedures failed because "local delegations only make recommendations" and "[l]ocal legislation is not officially enacted until it is voted on by a majority of the full House and Senate and signed by the Governor."  Id. at 1296.

The Black Caucus attempts to escape the reasoning of DeJulio by attacking the districts from which the local legislators are elected, as opposed to the systems

under which the local delegations operate.  Both <u>DeJulio</u> and <u>Vander Linden</u>
involved challenges to the procedures for the enactment of local legislation.  <u>See</u>
<u>DeJulio</u>, 290 F.3d at 1292–93; <u>Vander Linden</u>, 193 F.3d at 270.  But the Black
Caucus has not explained how its litigation strategy should alter our analysis under
the Equal Protection Clause.  <u>DeJulio</u> establishes that, when local legislation must
be passed by the entire legislature and signed by the Governor, an informal rule of
local courtesy like the one in Georgia does not violate the one person, one vote
requirement of the Fourteenth Amendment because the government functions are
performed by the Legislature as a whole.  The amended complaint filed by the
Black Caucus alleges that Alabama has the same kind of informal system of local
courtesy.  The Black Caucus has offered us no explanation for its argument that the
district maps are somehow unconstitutional because they elect legislators who
participate in a process that the Eleventh Circuit has previously explained does not
violate the principle of one person, one vote.  And the Black Caucus has cited no
decision in which a court has concluded that the appropriate remedy for an equal
protection challenge to a local legislative scheme is to redraw district lines for the
entire legislature.

        The Black Caucus has also failed to establish how its claim about the one
person, one vote rights of county voters is in any way connected to its claim for
partisan gerrymandering.  The Black Caucus has not alleged that the state

16

legislators acted with an invidious partisan purpose to affect local legislation. Instead, the Black Caucus alleges that the state legislators prioritized partisan interests over the state constitutional requirement that county boundaries be preserved.  But the Black Caucus has not alleged that the Fourteenth Amendment requires a federal court to enforce a state constitutional requirement like the whole county provision.  To the extent that the Black Caucus has simply repackaged its claim that the districts violate the whole-county provisions of the Alabama Constitution as a partisan gerrymandering claim, we have already explained that we lack subject-matter jurisdiction to consider a claim that state officials violated state law.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 117, 104 S. Ct. 900, 917 (1984).

For all these reasons, we cannot conclude that the Black Caucus is entitled to a judgment as a matter of law.  We entertain serious doubts that the Black Caucus has even stated a claim for which relief can be granted in count three of its amended complaint.

### C.  The Black Caucus Has Also Failed to Establish that No Genuine Issue of Material Fact Is Disputed.

Even if the Black Caucus had stated a claim for partisan gerrymandering upon which relief could be granted, genuine issues of material fact are in dispute. The Black Caucus asserts that it is undisputed that the two percent population deviation established by the Legislative Reapportionment Committee was

17

"arbitrar[y] and impracticabl[e]"; that the two percent population deviation "was adopted for an explicit partisan purpose, . . . to avoid the type of partisan gerrymandering found unconstitutional in Larios"; that the legislative maps were drawn "to promote the agenda of the partisan majority to maximize the number of seats statewide that Republicans will hold in the Legislature"; and that the comments of individuals who attended meetings of the Legislative Reapportionment Committee were "ignored by the Legislature."  But the State defendants contend that the two percent population deviation established by the Legislative Reapportionment Committee was designed to "comply with the general constitutional mandate that districts be [] nearly equal in population to each other, without the need for absolute equality"; that the Legislative Reapportionment Committee was driven by obligations under the Voting Rights Act, but also took into account the concerns of legislators; that the Legislative Reapportionment Committee sought "to preserve communities of interest, which sometimes includes county lines," in a manner that would not violate the Voting Rights Act or the two percent population deviation; and that the Legislative Reapportionment Committee took into account the concerns raised at public hearings as best they could.  The Black Caucus has not established that "there is no genuine dispute as to any material fact" with regard to the manner in which the legislative maps were

18

crafted, <u>see</u> Fed. R. Civ. P. 56(a), and is not entitled to summary judgment on count three of its amended complaint.

### III.  CONCLUSION

We **DENY** the motion to alter or amend our judgment.  We sua sponte **VACATE** our initial order denying the second motion for partial summary judgment and **SUBSTITUTE** this memorandum opinion and order.  We **DENY** the second motion for a partial summary judgment for the reasons stated above.

DONE this 5th day of April, 2013.

<u>    /s/ William H. Pryor Jr.</u>
UNITED STATES CIRCUIT JUDGE
PRESIDING

<u>    /s/ W. Keith Watkins</u>
CHIEF UNITED STATES DISTRICT
JUDGE